262 P.2d 671

GENERAL ALARM, Inc. v. UNDER-
DOWN et al.
No. 5692.

Supreme Court of Arizona.
Nov. 2, 1953.

Yale McFate, Phoenix, for appellant.

Eli Gorodezky and Walter P. Boyd, Phoenix, for appellees.

WINDES, Justice.

Complaint was filed by appellant General Alarm, Inc., a corporation, herein designated plaintiff, against appellees Joe B. Underdown and Glen D. McMurtry, herein designated defendants. Defendants moved for dismissal upon the ground that

the complaint failed to state a claim upon which relief could be granted. The motion to dismiss was allowed and final judgment entered for the defendants. Plaintiff appeals and assigns as error the dismissal of the complaint, for the asserted reason that the facts stated in the complaint were sufficient to show plaintiff to be a public service corporation and entitled to the relief sought.

The allegations of the complaint which are essential to test the ruling of the trial court are substantially as follows: That plaintiff is an Arizona corporation and under its articles of incorporation is authorized to act as a public service corporation; that pursuant to the application of one R. L. Wilson, the Arizona Corporation Commission, on May 9, 1950, entered an order finding that the public convenience and necessity required the installation, maintenance and operation of a burglary, fire and emergency signal and alarm system within a radius of 25 miles from the cities of Phoenix and Tucson and granted applicant a certificate of public convenience and necessity authorizing the transmission of messages over, through or in connection with the operation of a signal and alarm system; that the corporation commission on February 23, 1951, authorized the transfer of said certificate to the plaintiff, and the plaintiff has succeeded to all rights thereunder and is operating said business. It is further alleged that Wilson expended large sums of money and much labor in the construction of the signal and alarm system, secured subscribers to the service, and at all times held himself out as ready and willing to serve all applicants without discrimination at rates on file with the corporation commission; that after plaintiff's system was installed the defendants proceeded, without a certificate of convenience and necessity from the Arizona Corporation Commission, to install a similar alarm system in Phoenix and are operating in competition with the plaintiff and serving some of plaintiff's customers. The complaint prays that the defendants be enjoined from operating any signal and alarm system which incorporates as an integral part thereof the transmission of messages and be enjoined from the transmission of messages over, through, or in connection with the operation of a signal and alarm system. The nature of the operation of the system is stated in the complaint in the following language:

" * * * the transmission of emergency messages by use of central office equipment and connecting wires and electric and electronic equipment. That in the normal operation of said business, telephonic and electrically coded telegraphic messages are transmitted by wires and other equipment under the control of the central office, from the customer's residence or place of business to such central office, where such messages are relayed by direct telephone or coded telegraphic means,

over similar transmission lines to the fire department, sheriff's office, city police department or other governmental agency."

It is clear that if the business and the methods employed in the operation thereof as described in the complaint places it in the category of a public service corporation requiring a certificate of convenience and necessity, thereby putting it under the supervision and control of the corporation commission, the court erred in dismissing the complaint. Likewise, if such business and its methods of operation do not so classify it, free competition cannot be interfered with and the plaintiff would have no cause of action. The correct answer to the problem thus posed is dependent upon the proper construction of Sections 2 and 10, Article 15, Constitution of Arizona, which so far as applicable are as follows:

"All corporations other than municipal engaged in * * * transmitting messages or furnishing public telegraph or telephone service, * *, shall be deemed public service corporations." Section 2.

"* * * all * * * transmission, telegraph, telephone, * * * corporations, for the transportation of persons, or of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and subject to control by law." Section 10.

To be a public service corporation, its business and activities must be such as to make its rates, charges, and methods of operation a matter of public concern. It must be, as the courts express it, clothed with a public interest to the extent clearly contemplated by the law which subjects it to governmental control. Free enterprise and competition is the general rule. Governmental control and legalized monopolies are the exception and are authorized under our constitution only for that class of business that might be characterized as a public service enterprise. The theory is that the right to public regulation and protection outweighs the customary right of competition. If the public contact with a business is such that its necessities and convenience can be better served through governmental supervision and controlled monopoly, thereby eliminating customary competition, the state may exercise its police power to that end. Such invasion of private right cannot be allowed by implication or strained construction. It was never contemplated that the definition of public service corporations as defined by our constitution be so elastic as to fan out and include businesses in which the public might be incidentally interested or businesses that might incidentally transmit messages in furtherance of the main object of the enterprise that otherwise could not be so characterized. The public has some interest in all business establishments but that interest must be of

such a nature that competition might lead to abuses detrimental to the public interest. The public interest contemplated depends on the nature of the business, the means by which it touches the public, and the abuses which may reasonably be anticipated if not controlled. Chas. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280. Our constitution must and easily can be interpreted in harmony with these principles. So construed, it is only in the interest of the convenience and necessity of the public, of the nature and to the degree herein stated, that a business may be supervised and controlled, rates fixed or monopolies granted.

■ Our view is that the plaintiff cannot qualify as a public service corporation. The constitution says it must be engaged in sending messages. Necessarily, this means it must be in the *business* of sending messages for the *public*. Plaintiff's business cannot within reason be said to be that of sending messages for the public generally or any substantial segment thereof. Its business is essentially that of property protection. Through means of the installations described, it receives or you might say sends to itself information which in turn it, by means of telephone or otherwise, conveys to the public officials. It is essentially a mechanical watchman. The relaying of the information which it gains electrically or mechanically is not different from messages any

watchman might relay over the telephone or otherwise to the police station. One is no more a public service than the other. Certainly the public is interested in the protection of property but these services are not performed for the benefit of the public but for the benefit of the individual property owners. The transmission of the information is merely incidental to the operation of the plaintiff's main business —property protection.

A similar question was presented to the appellate division of the supreme court of New York in the case of Holmes Electric Protective Co. v. McGoldrick, 262 App.Div. 514, 30 N.Y.S.2d 589, 592. Therein a statute imposed an excise tax on utilities, and utility was defined as any person subject to the supervision of the department of public service or engaged in the business of furnishing or selling electric, telephone or telegraph service. The state public service commission had theretofore decided it had no jurisdiction and the court held that the company was not engaged in the business of selling electrical, telephone or telegraph service but was engaged in the business of protecting the customer's property. The court said:

"Analysis of the testimony adduced and of the various types of contract between petitioner and its customers establishes, in our opinion, that petitioner during the taxable period was not engaged in the sale of electric, telephone or telegraph service within

the meaning of the tax laws. The electric signals transmitted over petitioner's wires are only incidental to the ultimate contractual purpose between petitioner and its customers, namely, protection of the customer's premises from unauthorized entry. What the customer buys and pays for is not a telegraph service. That consists essentially in the mere transmission of communications, the service of the telegraph company being completed when the message has been transmitted. Petitioner's customers were purchasing and petitioner was selling what began when the electric signals were transmitted, namely, some form of protection of the customers' premises.

"Railroad and subway companies use electric signal systems to provide safe operation of their trains. Obviously, such companies are not engaged in telegraphic service for their customers, as such term is ordinarily understood. The customers of such companies are buying and the company is selling transportation. Here the customers are buying not telegraphic service as it is ordinarily understood but protection of their premises."

By legitimate analogy, plaintiff's customers are not buying messenger service but protection of their premises.

Plaintiff leans heavily on the majority opinion in Holmes Electric Protective Co. v. Williams, 228 N.Y. 407, 127 N.E. 315. The question presented there is not the same as that presented here. This case is distinguished in Holmes Electric Protective Co. v. McGoldrick, supra, and we think it is equally distinguishable here.

The judgment is affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concurring.