422 P.2d 118

**David H. CAMPBELL,** *Superintendent of the* Motor Vehicle Division of the Arizona Highway Department, State of Arizona, Appellant,

v.

The **COMMONWEALTH PLAN, INC.,** a Massachusetts corporation, Appellee.

No. 8826–PR.

Supreme Court of Arizona.

In Banc.

Dec. 22, 1966.

Rehearing Denied Jan. 31, 1967.

Darrell F. Smith, Atty. Gen., Harry Schoolitz, Jr., Asst. Atty. Gen., for appellant.

Arthur P. Greenfield, Snell & Wilmer, Phoenix, for appellee.

McFARLAND, Justice.

The Commonwealth Plan, Incorporated, a Massachusetts corporation, hereinafter referred to as plaintiff, brought an action against David H. Campbell, Superintendent of the Motor Vehicle Division of the State Highway Department, State of Arizona, hereinafter referred to as defendant, to recover certain license taxes imposed under A.R.S. § 40–641, which were paid under protest. This case is one of statutory interpretation, and none of the following facts are in dispute.

Plaintiff purchased a number of vehicles from Arizona Public Service, and leased them back to the seller. Defendant required plaintiff to pay a license tax pursuant to A.R.S. § 40–641 on all of these vehicles which had an unladen weight of 6,000 or more pounds. Plaintiff paid the taxes imposed by defendant, but the taxes paid on vehicles which were not used to transport property were paid under protest

as provided in A.R.S. § 40–648. Plaintiff alleged that before he could be held liable for taxes under A.R.S. § 40–641, as a contract motor carrier of property, the lessor's vehicles for which the tax is imposed must be used to transport property as required by A.R.S. § 40–601, subsec. A(5). Plaintiff filed complaints in accord with A.R.S. § 40–648 for the recovery of taxes paid under protest, and both parties stipulated all other suits filed by plaintiff concerning taxes under A.R.S. § 40–641 on these same vehicles would be bound by the judgment in this action. Further stipulations were: all the vehicles in question were over the 6,000-pound unladen weight requirement; they are used by the lessee, Arizona Public Service, in furtherance of its utility business which may be characterized as a commerical or industrial enterprise; and none of the vehicles (for which plaintiff is seeking to recover the license tax paid) are used for transporting property upon the public highways.

Both plaintiff and defendant moved for a summary judgment, and, after a hearing on these motions, the trial court granted plaintiff's motion and entered judgment thereon. Defendant appealed to the Court of Appeals, Division One, which affirmed the trial court's decision. 3 Ariz.App. 520, 416 P.2d 199. From this decision we granted a petition for review. The decision of the Court of Appeals is vacated.

The sole issue in this appeal is a question of statutory construction as to whether the license tax imposed on a lessor by A.R.S. § 40–641 as a "contract motor carrier of property" was proper under the definition found in A.R.S. § 40–601, subsec. A(5). Does the statute A.R.S. § 40–601, subsec. A(5) require that the lessee use the leased vehicles for transportation of property before the lessor is liable for the tax provided for under A.R.S. § 40–641 as a contract motor carrier of property, or does this tax on the lessor also apply if the lessee uses the vehicle on public highways in any manner which is in furtherance of the lessee's commercial or industrial enterprise?

556

The predecessor to A.R.S. § 40–601, subsec. A(5) is found in § 66–501 A.C.A., 1939. This provision reads:

"'Contract motor carrier of property' shall mean any person engaged in the transportation on any public highway by motor vehicle of property, for compensation, and not included in the term common carrier of property."

Section 66–518 A.C.A. 1939 provided for a tax on those classified under the above-quoted definition. In 1956, § 66–501 A.C.A. 1939 was amended, and appeared in A.R.S. § 40–601 subsec. A(5) in part as follows:

"5. 'Contract motor carrier of property' means any person engaged in the transportation by motor vehicle of property, for compensation, on any public highway, and not included in the term common motor carrier of property, * * *" A.R.S. § 40–601, subsec. A, ¶ 5

This portion of A.R.S. § 40–601, subsec. A(5) shall be designated Part One for the purposes of facilitating discussion. It should be noticed that there is no substantial change between Part One of A.R.S. § 40–601, subsec. A(5) and its previously quoted predecessor found in § 66–501 A.C.A. 1939. However, in A.R.S. § 40–601, subsec. A(5) expanded the definition of a "contract motor carrier of property" by adding the following phrase to the definition:

"* * * and, *for the purpose of taxation,* the owner of any motor vehicle in excess of six thousand pounds unladen weight who leases, licenses or by any other arrangement permits the use of such vehicle by any other, other than a common or contract carrier subject to tax under articles 1 and 2 of this chapter, for the transportation of property upon the public highway for compensation or in the furtherance of any commercial or industrial enterprise." [Emphasis added.] A.R.S. § 40–601, subsec. A, ¶ 5

This portion of A.R.S. § 40–601, subsec. A(5) shall be designated Part Two to facilitate discussion.

Plaintiff contends that Part Two should be interpreted so that the lessor is a "con-tract motor carrier of property" if the 6,-000-pound leased vehicles (a) transport property upon the public highway for compensation, or (b) transport property upon the public highway in furtherance of any commercial or industrial enterprise. Defendant contends that this same Part Two should be interpreted so that the lessor is a "contract motor carrier of property" *for the purposes of taxation,* if the 6,000-pound leased vehicles (a) transport property upon the public highway for compensation; or (b) are used upon the public highway in the furtherance of any commercial or industrial enterprise. Plaintiff maintains that the last phrase of Part Two—"or in the furtherance of any commercial or industrial enterprise"—is a disjunctive which is an alternative for the preceding words "for compensation." Defendant maintains that this last phrase of Part Two is a disjunctive which is an alternative for the preceding phrase "for the transportation of property * * * for compensation." The sole question to be decided here is which of these positions is correct.

It should be first noted that Part Two only expands the definition of "contract motor carrier of property" for the purposes of taxation, and the Part One definition is the sole definition in any case where tax liability is not in issue.

Plaintiff relies heavily on two Arizona cases to support its position that the vehicles must transport property before there is a license tax liability. In State v. Southwest Lumber Mills, Inc., 80 Ariz. 357, 297 P.2d 1099, this court held that parties taxed under § 66–518, A.C.A.1939 were not liable for a tax as § 66–501, A.C.A.1939 "contract motor carriers of property" for they merely leased and repaired the vehicles, and they were not in control of those vehicles, nor did they transport property in them. This case was a proper statement of the law at that time, but it is not controlling under the facts of the instant case, because the definition of a "contract motor carrier of property" even for tax purposes was limited to Part One, because

Part Two was not passed until after the taxes had already been imposed. Part Two is the applicable portion of the statute to decide the instant case. Plaintiff also cites Mecham Pontiac v. Williams, 94 Ariz. 144, 382 P.2d 558, and urges that this case should control because it construes A.R.S. § 40–601, subsec. A(5) after the addition of Part Two. Part Two begins " * * * for the purposes of taxation * * *." In Mecham Pontiac v. Williams, supra, the issue was whether or not Mecham Pontiac was a "contract motor carrier of property" for the purposes of requiring that it obtain a certificate of convenience and necessity. It is clear that only the definition of "contract motor carrier of property" that appears in Part One of A.R.S. § 40–601, subsec. A(5) was construed there for this was not a tax case, and Part Two is limited to tax cases. Part Two has never been construed, and Mecham Pontiac v. Williams, supra, is not controlling in the instant action.

■■ A careful reading of Part Two discloses that an owner who leases, licenses or permits another to use his vehicles can only be classified as a contract motor carrier of property if the user is neither a common nor a contract carrier subject to tax. The intent is clear. There can be only one tax levied per vehicle, and if the user qualifies as a contract or common carrier subject to the tax, then the owner cannot be liable.

■ There is nothing in Part One which requires ownership of the vehicle by the user; therefore, a lessee or any other user may be liable for a tax under A.R.S. § 40–641 without being the owner of the vehicle taxes. With the knowledge that a lessee can be liable for tax under A.R.S. § 40–641, and that if he is, then a lessor cannot also be liable, we will analyze Part Two of A.R.S. § 40–601, subsec. A(5).

■■ The state of the law is that any user of vehicles upon the public highway may be liable for a tax under A.R.S. § 40–641 as either a contract or common carrier of property if he transports property upon the public highway and charges compensation for this transportation. As previously mentioned, there is no liability for the tax under Part Two of the statute, A.R.S. § 40–641, where the user is liable for this tax. Were the plaintiff's contention correct in that the vehicles must transport property, then the extent of the expanded tax liability found in Part Two is limited to cases where the user transports property upon the public highway, not for compensation, but in furtherance of the user's commercial or industrial enterprise; or, as set out in Killingsworth v. Morrow, 83 Ariz. 23, 315 P.2d 873, where the user transports property upon the public highway and charges compensation, but this service is merely incidental to another business activity such as a wrecking service being incidental to an automotive repair business. We do not think that the legislature intended that Part Two of A.R.S. § 40–601, subsec. A(5) was to have such a limited application in expanding the tax base provided for under A.R.S. § 40–641.

■ Construing A.R.S. § 40–601 and A.R.S. § 40–641 together, we find the legislative intent of these statutes is to collect revenue for the maintenance of Arizona highways from parties who enter into business arrangements which look directly to the inordinate use of public highways to realize pecuniary benefits (unless this use is merely incidental to other business activities). See Lane v. Lewis, 81 Ariz. 28, 299 P.2d 198. A lessor certainly fits within this definition whether the leased vehicles are used for transporting property or in any commercial activity of the lessee-user. In cases where the transportation of property by motor vehicle is not incidental to another business activity, and compensation is received for this inordinate use of the public highways, owner-operators are charged a license tax under A.R.S. § 40–641, because the primary business function involves a business arrangement looking toward a direct pecuniary gain from the inordinate use of the public highway. In case of lessors, the legisla-

**558**

ture felt that such leasing of vehicles for the transporting of property *or* in furtherance of any commercial or industrial enterprise of the lessee, justified the imposition of a license tax on the lessor, because even though the lessee was not liable for such a tax under many of these situations, the lessor was deriving a direct pecuniary gain as a result of the inordinate use of the Arizona highway system.

■ A most convincing reason for a determination that it is not required that the user transport property under Part Two is the fact that there can be no tax imposed under Part Two unless the vehicle in question weighs over 6,000 pounds unladen. There is no such requirement in Part One, and the only rational explanation for this distinction is that the legislature recognized that heavy vehicles resulted in much more wear and tear to our highway system. Because they were not requiring the transportation of property as a prerequisite of taxing lessors, the legislature felt that this large minimum-weight requirement was needed to protect this tax against claims of unconstitutional discrimination in cases where the leased vehicles were not transporting property, and were so light that they did not inflict the serious wear and tear on the public highways as did those vehicles which were transporting property.

Plaintiff contends that the phrase " * * or in the furtherance of any commercial or industrial enterprise" modifies the preceding phrase "for compensation." If this were true, the statute's ending should read:

" * * * for the transportation of property upon the public highway for compensation or *for* the furtherance of any commercial or industrial enterprise." [Emphasis added.]

Placing the word "for" before "the furtherance of any commercial or industrial enterprise" would change the meaning of the sentence. Plaintiff cites authority for the proposition that any ambiguities in a taxing statute will be construed most strongly against the taxing authority, and

in favor of the taxpayer. We do not disagree with this contention. In the most recent case cited for this proposition, Arizona State Tax Commission v. Staggs Realty Corporation, 85 Ariz. 294, 337 P.2d 281, this court stated:

"First, it is especially important in tax cases to begin with the words of the operative statute. We have repeatedly said that such words will be read to gain their *fair meaning,* but not to gather new objects of taxation by strained construction or implication. * * * (citing cases) * * *" 85 Ariz. at 297, 337 P.2d at 283 [Emphasis added.]

To hold lessors liable for the tax under A.R.S. § 40–641, under the facts of the instant case is neither a strained construction of Part Two, nor is such a tax only imposed through implication. This is merely an application of the statute's "fair meaning." The intent of the statute is clear, and keeping this intent in mind as one reads Part Two of A.R.S. § 40–601, subsec. A(5), it certainly seems clear that the legislature intended to impose provisions of A.R.S. § 40–641 on lessors such as plaintiff under the facts of this case.

■ Plaintiff also argues that because A.R.S. § 40–601, subsec. A(5) begins " 'Contract motor carrier of property' means * * *" that not even a lessor can be taxed as a contract motor carrier of property unless the leased vehicles actually do transport property. Plaintiff's contention is correct as to Part One of the statute, but Part Two expands this definition in tax cases concerning lessors and others. The general phrase at the beginning does not govern over the *more particular words* found in Part Two. As we held in Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, and Moore v. Farmers Mut. Mfg. & Ginning Co., 51 Ariz. 378, 77 P.2d 209, wherein a statute has a general and a particular provision, if the case under consideration falls within the particular provision, this provision will govern, and the general one must be taken to affect only those cases within the general language of the

statute which do not fall within the particular enactment. The present case falls within the particular provisions of Part Two; therefore, Part One does not govern the outcome of this case, and general provisions found therein are not controlling in this decision.

The case is reversed with directions to enter a judgment in accord with this opinion.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.