426 P.2d 418

The **ARIZONA CORPORATION COMMISSION and Armored Motor Service of Arizona, Inc., and Securities Transport Company, Inc., Appellants,**

v.

**CONTINENTAL SECURITY GUARDS, an Arizona corporation, Appellee.**

**No. I CA–CIV 463.**

Court of Appeals of Arizona.

April 12, 1967.

Rehearing Denied May 10, 1967.

Review Granted June 13, 1967.

Darrell F. Smith, Atty. Gen., by H. J. Lewkowitz, Asst. Atty. Gen., for appellant Arizona Corporation Commission.

Evans, Kitchel & Jenckes, by Earl H. Carroll and G. Starr Rounds, Phoenix, for appellants Armored Motor Service of Arizona Inc., and Securities Trans. Co., Inc.

Gorey & Ely, by Herbert L. Ely, Kaplan, Wilks & Abrams, by Richard B. Wilks, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal by the Arizona Corporation Commission and two armored car service companies from a decision of the Superior Court of Maricopa County setting aside a finding by the Arizona Corporation Commission that the appellee, Continental Security Guards, Inc., must first obtain a certificate of convenience and necessity from the Arizona Corporation Commission before it may operate an armored car service in the State of Arizona.

We are called upon to determine whether the plaintiff, under the Constitution and statutes of the State of Arizona, is subject to regulation by the Arizona Corporation Commission.

The facts necessary for a determination of this matter on appeal are as follows. Appellee Continental Security Guards, Inc., an Arizona corporation, holds itself out as being in the business of transporting cash and currency for various businesses located primarily in Maricopa County, State of Arizona. The president of the company described Continental Security Guards, Inc., as "umbrella-type operation that covers subsidiaries such as Arizona State Guard" and that the general nature of the business was security. The testimony indicates that they have an armored car with a driver and most of the time an associate who "rides shotgun", and that various cash deposits and bags are picked up from businesses and transported and at times deposited in banks designated by the customers. The testimony also indicates they solicit this business primarily in Maricopa County.

The appellants, Armored Motor Service of Arizona, Inc. and Securities Transport Company, Inc., were intervenors in the trial court and hold certificates of convenience and necessity from the Arizona Corporation Commission.

Previously the intervenors had filed a complaint with the Arizona Corporation Commission and the matter was heard 14 June 1965, at which time it was taken under advisement. On 26 July 1965 the Commission ordered Continental to cease and desist from providing further armored car service finding in part as follows:

"10. Defendant does not possess either a common carrier certificate of convenience and necessity or a contract carrier permit authorizing it to engage in the transportation of currency and valuables for hire, and its operations in providing such intrastate service within Arizona are contrary to the laws of the State of Arizona and the rules and regulations of this Commission.

"11. Complainants Armored Motor Service of Arizona, Inc., Securities Transport and Armored Car, Inc., are certified by this Commission to engage in business as intrastate common carriers of currency and valuables, and any competing common carrier service by Defendant will seriously effect the complainants and their ability to serve the public as authorized by this Commission."

After denial of an application for rehearing and an unsuccessful petition for writ of certiorari with the Arizona Supreme Court, Continental commenced an action in the Superior Court of Maricopa County pursuant to § 40–254 A.R.S. to vacate and set aside the order (or decision) of the Arizona Corporation Commission. Armored Motor Service of Arizona and Securities Transport Company, Inc. intervened and trial commenced 18 January 1966. The testimony educed at said trial showed that Continental solicited the business of transporting in an armored car cash and valuables for various businesses in the State of Arizona. After hearing, the Superior Court entered the following findings of fact and conclusions of law:

"(a) that the above plaintiff and intervenors are engaged in the business of protecting in transit money and valuables. That they pick up and deliver by use of an armored vehicle and armed cars currency and valuables for transport to banks and other places of deposit. That such service and transportation activities occur at various times and places according to the wishes of the persons and institutions serviced, and subject to individual contractual agreements. That the nature of the service is such that the routes traversed vary from time to time and with frequency depending upon the individual arrangements with and needs of the persons and institutions serviced.

"(b) that in their business activities the function of the transportation is incidental to the prime function which is the physical protection of the property transported.

"(c) that the plaintiff has never been adjudicated a contract or common carrier and that the Court further finds that the activities of the plaintiff and intervenors are not activities which classify them as contract or common carriers and therefore they are private carriers.

"That for the foregoing reasons the plaintiff and intervenors are not clothed with a public interest sufficient under the laws of the State of Arizona to subject them to governmental control as a public service corporation."

The Superior Court further found that the Arizona Corporation Commission acted in excess of its jurisdiction and that their orders and decisions in the matter were in excess of their powers. Timely notice of appeal was filed.

The sole question before this Court is whether from the facts as found by the Superior Court below—the activities of Continental Security Guards, Inc. in transporting for hire valuables in the State of Arizona—bring them within and under the control of the Corporation Commission of the State of Arizona. The Arizona Constitution, Article XV, § 2, A.R.S., states:

"All corporations other than municipal engaged in carrying persons or property for hire * * *, or in transmitting messages or furnishing public telegraph

or telephone service, and all corporations other than municipal, operating as common carriers, shall be deemed public service corporations."

Section 10, Article XV of the Arizona Constitution states:

"Railways heretofore constructed, or that may hereafter be constructed, in this State, are hereby declared public highways, and all railroad, car, express, electric, transmission, telegraph, telephone, or pipeline corporations, for the transportation of persons, or of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and subject to control by law."

Article XV, § 10, has been construed by the Arizona Supreme Court to apply to motor vehicles. Corporation Commission v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443 (1939). And our code states:

"'Common motor carrier of property' means any person engaged in the transportation on any public highway by motor vehicle of property for compensation as a common carrier." A.R.S. 40–601.

And:

"A common motor carrier shall not operate within this state as such without first having obtained from the commission a certificate of public convenience and necessity. * * *" 40–607, subsec. A, A.R.S.

■ In order for Continental Security Guards to be placed under the control and regulated by the Arizona Corporation Commission the Constitution and the statutes of the State of Arizona must clearly apply. There is no presumption that a business activity is within the regulation of the Corporation Commission, but quite the contrary, a presumption that it is not. As our Supreme Court has stated:

"Free enterprise and competition is the general rule. Governmental control and legalized monopolies are the exception and authorized under our constitution only for that class of business that might be characterized as a public service enterprise. * * * If the public contact with a business is such that its necessities and convenience can be better served through governmental supervision and controlled monopoly, thereby eliminating customary competition, the state may exercise its police powers to that end. Such invasion of private right cannot be allowed by implication or strained construction." General Alarm v. Underdown, 76 Ariz. 235, 262 P.2d 671 (1953).

■ Appellee cites three cases in support of his position. The first is Williams v. State ex rel. Smith, 2 Ariz.App. 291, 408 P.2d 224 (1965) and can be distinguished from the present case in that the primary and general function of Williams was in the dismantling, severing and replacing houses upon the new foundation. In the Arizona Supreme Court case of Quick Aviation Company v. Kleinman, 60 Ariz. 430, 138 P.2d 897 (1943), the Supreme Court determined that the air transportation of insecticides to be sprayed from an airplane was merely incidental to the crop dusting activities being carried on by the company, and likewise in Killingsworth v. Morrow, 83 Ariz. 23, 315 P.2d 873 (1957), the Arizona Supreme Court stated:

"Certaintly, if one whose principal business is that of servicing and repairing cars tows the same for the purpose of repairing or servicing, he would be transporting them for bailment or in furtherance of his principal commercial enterprise and would thereby qualify as a private carrier."

The Supreme Court went on to say however:

" * * * If any portion of the receipts upon which this tax was levied was derived from towage charges not performed in the furtherance of or incident to his garage business but separate and apart therefrom, such receipts would be taxable as income derived from transporting property for compensation as a common carrier or contract carrier."

And we stated in Williams, supra:

"When the houses are moved on the public highway, the movement itself is merely an incident to the main purpose for which the defendants contract with the owner of the property or the building, and for which the defendants received a remuneration."

From reading the record below we are unable to agree that the three cases cited (Williams, Quick and Killingsworth, supra) apply and that the transportation of cash, currency and other valuables by Continental Security guards is a mere incident of the guarding of these valuables any more than the transportation in a refrigerated truck of frozen foods is a mere incident to the maintenance of the temperature of the food below a freezing temperature. In both instances the customer is concerned with the safety of the product, but a substantial portion of the time, money and effort is expended in the transportation of the property on the public highways by motor vehicle. The finding of the trial court that the transportation was merely an incident to the guarding is, then, not supported by the evidence.

Our Supreme Court has indicated that where there is a certificated carrier and a new applicant for a certificate of convenience and necessity, the certificated carrier must be given a chance to increase its service so that the service applied for will be offered before granting the second certificate. Corporation Commission v. Pacific Motor Trucking Company, 100 Ariz. 87, 412 P.2d 33 (1966), Cagle Brothers Trucking Service v. Arizona Corporation Commission, 96 Ariz. 270, 394 P.2d 203 (1964).

For the reasons stated, the decision of the trial court is reversed and set aside, and the findings of the Corporation Commission are reinstated.

Judgment reversed.

DONOFRIO and STEVENS, JJ., concur.