408

595 P.2d 200

Philip THORNEYCROFT, Assistant Director, Motor Vehicle Division, Arizona Department of Transportation, Appellant,

v.

EMERY AIR FREIGHT CORPORATION, Appellee.

No. 1 CA–CIV 4071.

Court of Appeals of Arizona, Division 1.

March 13, 1979.

Rehearing Denied April 25, 1979.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen. by Edwin P. Lee, Asst. Atty. Gen., Phoenix, for appellant.

Snell & Wilmer by Daniel J. McAuliffe, Phoenix, for appellee.

OPINION

WREN, Presiding Judge.

This is an appeal from a summary judgment entered in an action to recover assessed motor carrier gross receipts license taxes. The trial court ruled that plaintiff-appellee Emery Air Freight Corporation (plaintiff) was neither a common nor a contract carrier and ordered a refund of the

taxes which had been paid under protest plus interest from the date paid. Defendant-appellant, Arizona Department of Transportation (defendant) sought review of this decision alleging that plaintiff's operations constituted a common or contract carrier of property subject to taxation and required qualification of the corporation in Arizona as a prerequisite to maintaining its claim in an Arizona court. Finding that we cannot agree with defendant's contentions, we affirm the trial court's refund to plaintiff of the assessed taxes.

Plaintiff is a Delaware corporation engaged, for over thirty years in Arizona, in the interstate commerce business of air freight forwarding. The corporation arranges for the transportation of personal property by commercial airlines. Since 1971 plaintiff has furnished a pickup and delivery service to its Arizona air freight forwarding customers. It is this pickup and delivery service upon which defendant relied for imposition of the gross receipts license tax.

■ The first question to be resolved is whether the plaintiff was required to qualify in Arizona as a prerequisite to maintaining its claim. A.R.S. § 10–481. It is constitutionally permissible for a state to impose penalties upon a foreign corporation doing business in a state without complying with the state's qualification statutes. *Eli Lilly & Co. v. Sav-On-Drugs,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). However, it is equally true that a state may not require qualification of a foreign corporation if its business is interstate rather than intrastate in nature. *Robbins v. Shelby County Taxing District,* 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887). As discussed in *Weber Showcase & Fixture Company, Inc. v. Co-Ed Shop,* 47 Ariz. 415, 418, 56 P.2d 667, 669 (1936), the qualification question is determined by the nature of the business:

> [I]t is, of course, true that if the transaction in question was purely an interstate one, no state legislation could affect its validity, nor could our Legislature forbid it access to the state courts for the purpose of enforcing any rights which might arise out of the transaction. The real question, therefore, is, Was the transaction an interstate or intrastate one?

The United States Supreme Court, in *Department of Revenue of the State of Washington v. Association of Washington Stevedoring Companies,* 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978), reaffirmed that stevedoring (the loading and unloading of freight from vessels which moved in interstate commerce only) was an interstate commerce activity. We do not believe that the limited pickup and delivery service engaged in by plaintiff was sufficiently distinct from the interstate commerce nature of the business to permit its classification as intrastate business. Finding that such services were merely part of the flow of interstate commerce, we hold that the plaintiff was not required to qualify in Arizona and, therefore, was free to maintain this suit for tax refund.

■ The second argument advanced by the defendant is that plaintiff's operations constitute the common or contract motor carriage of property and are, therefore, subject to taxation pursuant to A.R.S. § 40–641 as well as the certificate or permit, registration, and bonding requirements of A.R.S. §§ 40–607, 40–608, 40–613, and 40–642. Plaintiff contends that it is a private motor carrier of property and, hence, not subject to regulation at all. The trial court, in granting plaintiff's Motion for Summary Judgment, held that plaintiff was neither a common nor a contract motor carrier within the meaning of A.R.S. § 40–601 and was not subject to the motor carrier gross receipts license tax imposed by A.R.S. § 40–641. We agree with the trial court's conclusion.

The terms "common," "contract," and "private" motor carriers of property are defined in A.R.S. § 40–601. To fit within the "private" classification, thereby avoiding any regulation, plaintiff must prove that its pickup and delivery service is "in the furtherance of any commercial enterprise." Falling within either the "common" or "contract" category imposes tax liability under A.R.S. § 40–641.

The legislative intent of A.R.S. §§ 40–601 and 40–641 has been judicially defined as "collect[ing] revenue for the maintenance of Arizona highways from parties who enter into business arrangements which look directly to the inordinate use of public highways to realize pecuniary benefits (unless this use is merely incidental to other business activities)." *Campbell v. Commonwealth Plan, Inc.,* 101 Ariz. 554, 557, 422 P.2d 118, 121 (1966). The primary question before us, then, is whether plaintiff's pickup and delivery service is or is not in furtherance of or merely incidental to a commercial enterprise and, therefore, not subject to the motor carrier gross receipts license tax.

Although the issue of one business being in furtherance of another principal commercial enterprise has been dealt with in a number of Arizona cases, none of them is factually on point with the case at hand. In *Killingsworth v. Morrow,* 83 Ariz. 23, 315 P.2d 873 (1957), the court ruled that a car dealership and repair shop did not have to pay a gross receipts license tax for the towing service it provided in furtherance of and incidental to the garage repair business. In *Williams v. State,* 2 Ariz.App. 291, 408 P.2d 224 (1966), a house mover was not considered a common or contract motor carrier in conjunction with its use of the highways in moving the houses it dismantled and replaced since the actual moving was merely incidental to the main business of relocation and reestablishment. This Court, in *Boyes v. State,* 8 Ariz.App. 304, 445 P.2d 861 (1968), held that an entity engaged in the cutting and hauling of pulpwood was a private carrier since the hauling was incidental to the primary business enterprise of harvesting pulpwood. Although our Supreme Court reached the opposite conclusion, 105 Ariz. 34, 459 P.2d 86 (1969), *vacating,* 8 Ariz.App. 304, 445 P.2d 861 (1968), it continued to apply the same principal business test (and the legislature shortly thereafter amended A.R.S. § 40–601 to specifically include within the definition of private motor carriers the activities at issue in *Boyes.*)

In *Purolator Security, Inc. v. Thorneycroft,* 116 Ariz. 394, 569 P.2d 824 (1977) the court held that Purolator was a common motor carrier of property despite Purolator's contention that the principal business was security service with the armored car service being merely an incidental aspect of the service. The *Puralator* court distinguished its factual situation from the one present in *Arizona Corporation Commission v. Continental Security Guards,* 103 Ariz. 410, 443 P.2d 406 (1968), where the court had concluded that Continental was not a contract or common motor carrier since its principal business was protection and security and the armored car was merely a part of the security provided. In *Purolator* that armored car service generated approximately 80 percent of Purolator's total revenue and the court ruled that "Purolator is a common carrier which offers security as a part of its carriage service, not vice-versa." 116 Ariz. at 120, 569 P.2d at 828.

In the case at hand, plaintiff's pickup and delivery service is a limited one: the service extends only within a twenty five mile radius; it is offered only to plaintiff's air freight forwarding customers; and fees derived therefrom constitute only 12 percent of plaintiff's total revenues. As discussed above, the test for determining the propriety of exacting the motor carrier gross receipts license tax is whether plaintiff's pickup and delivery service is in furtherance of a principal commercial enterprise. We find that the plaintiff's motor carrier service is in furtherance of its principal business of air freight forwarding. Consequently, plaintiff qualifies as a private motor carrier and is, therefore, not subject to regulation under A.R.S. § 40–601 et seq. We affirm the trial court's refund to plaintiff of the assessed taxes.

Judgment affirmed.

DONOFRIO, J., and ROBERT J. CORCORAN, Superior Court Judge, concur.

NOTE: The Honorable ROBERT J. CORCORAN, Maricopa County Superior Court Judge was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to A.R.S. Const. Art. VI, § 3.