666 P.2d 49

Howard L. HIRSCH and Cynthia L. Hirsch, husband and wife, Plaintiffs/Appellees,

v.

NATIONAL VAN LINES, INC., a Delaware corporation, Defendant/Appellant.

No. 16176–PR.

Supreme Court of Arizona, In Banc.

May 12, 1983.

Law Offices of Paul G. Rees, Jr., Tucson by H. Michael Wright, Mesa, for plaintiffs/appellees.

Slutes, Browning, Sakrison & Grant by John Pelander, Tucson, for defendant/appellant.

GORDON, Vice Chief Justice:

Plaintiff Hirsch entered into an agreement to have his personal property moved from Chicago, Illinois to Tucson, Arizona by defendant National Van Lines (hereinafter referred to as National). When the property was received in Tucson, Hirsch found that several items were damaged and others were missing. Hirsch notified National of the problems with his property and ultimately filed a "statement of claim" with National. Although there were efforts at settling the claim, Hirsch eventually filed a complaint against National on May 14, 1980. The defendant was served by certified mail

in Illinois pursuant to Rule 4(e)(2)(a) Ariz.R. Civ.P. As a result of National's failure to answer, a default judgment was entered on September 29, 1980, in the amount of $96,287.50. The judgment included compensatory damages of $63,787.50, punitive damages of $25,000.00, and attorney's fees of $7,500.00.

On January 12, 1981, National moved to set aside the entry of default and original default judgment under Rule 60(c)(1) Ariz. R.Civ.P. Before any ruling the defendant moved to re-open and seek relief also under Rule 60(c)(4) and (6). The court permitted National to raise the additional issues and, after further hearing, denied the motion to set aside the default and the default judgment. An amended judgment was entered on July 14, 1981 deleting the attorney's fees, thus reducing the amount of the judgment to $88,787.50.

On appeal National raised several issues concerning both the denial of the motion to set aside and the amended default judgment. The Court of Appeals vacated the default judgment finding it void due to insufficient service of process. It is from this decision that Hirsch is now seeking review.

We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and Rule 23 Ariz.R.Civ. App.P. We vacate the decision of the Court of Appeals. 136 Ariz. 334, 666 P.2d 79.

### Service of Process

■ National initially claims that service by registered mail was not available to Hirsch since there was an individual in Arizona upon whom service could have been made. The defendant produced documents showing that it had a "designated agent" in Arizona as required by § 321(c) of the Interstate Commerce Act (now codified at 49 U.S.C. § 10330(b)). We do not believe that the presence of this agent should bar plaintiffs from utilizing the alternative means of service codified in Rule 4(e)(2) Ariz.R.Civ.P. when, as in the instant case, a foreign corporation has not registered to do business in Arizona and does not have a statutory

agent listed with the Corporation Commission.

■ The purpose of the statutory provision requiring motor carriers to designate an agent in each state in which it operates (49 U.S.C. § 10330(b)) is not to grant a privilege or benefit to carriers by limiting procedural rights of the residents of the state; rather, it is for the protection of the shippers and other persons injured in some manner by the carriers. See Madden v. Truckaway Corp., 46 F.Supp. 702 (D.Minn. 1942); Gerut v. Poe, 11 F.R.D. 281 (E.D.Ill. 1951); Trailer Express Inc. v. Gammil, 403 So.2d 1292 (Miss.1981); 49 U.S.C. § 10101 (general transportation policy).

In Madden, supra, the Court stated the following when considering the interaction between state rules of process and 49 U.S.C. § 321(c) (now codified at 49 U.S.C. § 10330(b)):

"But that Congress ever intended to interfere with the internal policies of the States with respect to the acquisition of jurisdiction in their local courts, and to supplant their various process statutes, is indeed most improbable, if not in conflict with the limitations on the power of the Federal government."

46 F.Supp. at 704. Furthermore, the language of 49 U.S.C. § 10330 is permissive rather than mandatory. It states that the "motor carrier * * * shall designate an agent in each State in which it operates * * on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier * * " (emphasis added). We conclude, therefore, that since there was no statutory agent registered with the Corporation Commission, it was permissible for Hirsch to utilize the alternative means of service referred to in Rule 4(e)(1) Ariz.R.Civ.P.

### Personal Jurisdiction

The Court of Appeals decided that because Hirsch had not fulfilled all of the requirements for service under Rule 4(e)(1), the trial court did not have personal juris-

diction over the defendant. Rule 4(e)(1) provides in part as follows:

"**Summons: alternative methods of service.** When a defendant is * * * a corporation incorporated under the laws of any other state or foreign country *which has no legally appointed or constituted agent in this state* * * * a summons shall be issued as in other cases and service may be made in accordance with sections 4(e)(2) or 4(e)(3) of this Rule." [emphasis added]

The part of Rule 4(e)(2) applicable in the instant case reads as follows:

"When the defendant is a * * * corporation doing business in this state * * * which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state."

Subparagraph (a) of Rule 4(e)(2) then states:

"Registered mail. When the whereabouts of a defendant outside the state is known, the serving party may deposit a copy of the summons and complaint in the post office, registering it with a return receipt requested. Upon return through the post office of the registry receipt, he shall file an affidavit with the court showing the circumstances warranting the utilization of the procedure authorized under Section 4(e)(1); and (a) that a copy of the summons and complaint was dispatched to the party being served; (b) that it was in fact received by the party as evidenced by the attached registry receipt; (c) that the genuine receipt thereof is attached; and (d) the date of the return thereof to the sender. This affidavit shall be prima facie evidence of personal service of the summons and complaint and service shall be deemed complete and time shall begin to run for the purposes of Section 4(e)(4) of this Rule thirty (30) days after the filing of the affidavit and receipt."

The plaintiff's affidavit of service read as follows:

"H. Michael Wright, being first duly sworn upon his oath, deposes and says:

"That he is one of the attorneys for the Plaintiffs in the above entitled case and being familiar with the facts he makes this Affidavit for Plaintiffs to establish service by certified mail upon the Defendant NATIONAL VAN LINES, INC., pursuant to Rule 4(e)(2)(a), Arizona Rules of Civil Procedure.

"Affiant states that on the date of service and of this Affidavit, the Defendant National Van Lines, Inc. was and is a non-resident corporation doing business in the State of Arizona, its address being Roosevelt and Gardner Road, National Plaza, Broadview, Illinois, 60153. On June 16th, 1980, Affiant enclosed a correct and true copy of the summons and complaint in the above action in a sealed envelope addressed to the Defendant National Van Lines, Inc. at the above address, certified to Defendant, return receipt requested, addressee only, and deposited the same postage-prepaid for mailing in Tucson, Arizona. Said receipt was returned to Affiant on June 21, 1980, and attached hereto is that genuine receipt, establishing receipt by the Defendant corporation of the copy of the Summons and Complaint on June 19, 1980 in Broadview, Illinois."

Attached thereto was the receipt.

The Court of Appeals ruled that the affidavit was insufficient because it failed to state that National did not have a "legally appointed and constituted agent in this state." Furthermore, the Court of Appeals noted that at the time of entry of default and at the time the default judgment was entered there was nothing in the record which "gave any hint as to the existence or non-existence of an agent of [National] in Arizona." Due to the incomplete affidavit, the Court of Appeals decided that service of process was incomplete and therefore the trial court lacked jurisdiction to enter a default judgment.

■ When considering the issue of jurisdiction, the Court will review the pleadings and affidavits filed by the parties. *Cocker-*

*ham v. Zikratch,* 127 Ariz. 230, 619 P.2d 739 (1980); *Chavez v. State of Ind., Logansport Hosp.,* 122 Ariz. 560, 596 P.2d 698 (1979). It is the fact of service and the resulting notice, rather than the proof of service, that establishes the court's jurisdiction over the defendant. *Safeway Stores, Inc. v. Ramirez,* 99 Ariz. 372, 409 P.2d 292 (1965). In *Cockerham* this Court considered whether a default judgment was void due to the plaintiff's failure to file the affidavit of service required by Rule 4(e)(2)(b) Ariz.R.Civ.P. The defendants claimed that the trial court did not have personal jurisdiction over them since the plaintiff did not comply with all the requirements of Rule 4(e)(2)(b). In rejecting this argument the Court stated:

> "[The defendants] claim only that the failure to comply with a technicality [filing the affidavit of service] prevented establishment of personal jurisdiction over them in the trial court. We hold that the failure to file the affidavit of service required by Rule 4(e)(2)(b), although reversible error, did not render the default judgment void for lack of personal jurisdiction where the facts to be contained in that affidavit appear in the verified complaint and affidavits of the process server."

*Cockerham,* 127 Ariz. at 234, 619 P.2d at 743.

■ In the case at bar the defendant claims that the default judgment is void because Hirsch's affidavit did not state "the circumstances [lack of a legally appointed agent in this state] warranting the utilization of the procedure authorized under Section (4)(e)(1)." Rule 4(e)(2)(a) Ariz.R.Civ.P. Although this is technically correct, the record indicates that while National's motion to set aside was pending facts developed which showed that it did not have a statutory agent in Arizona appointed pursuant to A.R.S. § 10–113. The record reflects that Hirsch's counsel had contacted the Arizona Corporation Commission and was advised that National was not authorized to do business in Arizona and had no statutory agent. In light of these facts and our decision in *Cockerham,* we believe that Hirsch's failure to state in his affidavit that National did

not have a legally appointed agent in Arizona did not render the default judgment void for lack of personal jurisdiction since there was evidence available to the judge at the time the motion to set aside was heard indicating that the defendant did not have a legally appointed agent in Arizona. We also note that Rule 4(i) Ariz.R.Civ.P. permits the trial court to allow process or proof of service thereof to be amended *at any time* unless material prejudice would result to the substantial rights of the party against whom the process issued. Although it would have been preferable for Hirsch to have followed this procedure, for the reasons previously discussed we do not believe that the failure to do so was fatal. Since Hirsch fulfilled all of the remaining elements of Rule 4(e)(2)(a), the trial court had personal jurisdiction over National.

### Motion to Set Aside

National also appeals the trial court's denial of its motion to set aside. The grounds upon which a party may be relieved from a judgment are set forth in Rule 60(c) Ariz.R. Civ.P. The defendant based its motion to set aside on subsections (1) mistake, inadvertence, surprise or excusable neglect; (4) the judgment is void; and (6) any other reason justifying relief from the operation of the judgment.

■ At the outset we note that it is a highly desirable legal objective that cases be decided on their merits and that any doubts should be resolved in favor of the party seeking to set aside the default judgment. *Richas v. Superior Court,* 133 Ariz. 512, 652 P.2d 1035 (1982); *Union Oil Co. v. Hudson Oil Co.,* 131 Ariz. 285, 640 P.2d 847 (1982). These matters, however, rest entirely within the trial court's discretion and will not be overturned on appeal unless a clear abuse of discretion has been shown. *Richas, supra, Union Oil, supra.* We have reviewed the record with these principles in mind and find that National has failed to make a sufficient showing with respect to any of its grounds to set aside.

National claims that the circumstances surrounding its receipt and handling of plaintiff's complaint constitute excusable neglect. In *Richas* we stated that the following elements must be shown in order to obtain such relief: (1) that the defendant acted promptly in seeking relief from the entry of default; (2) that its failure to file a timely answer was due to excusable neglect; and (3) that it had a meritorious defense. *Id.* at 514, 652 P.2d at 1037. Because we find that the defendant has failed to establish the second element we do not consider the other requirements.

An affidavit executed by John P. Torpats, National's corporate secretary and general counsel, stated:

" * * *

"2. That on June 19, 1980 the mailroom of the defendant received from the law offices of Paul G. Rees, Jr., P.C., counsel for the plaintiff, by certified mail, return receipt requested, copies of the Summons and Complaint filed in the above-styled proceeding.

"3. That the Summons and Complaint were then forwarded to me for review and appropriate action, and, after determining the nature of .the Complaint, I then referred the Complaint to the Director of our Claims Department, Mr. Dan Baisch, for review, analysis, and recommendation, with the request that I be supplied with this preliminary information by July 2, 1980.

"4. That the requested information, together with the litigation file that I had set up in this matter, was forwarded to me by the Director of our Claims Department on or about July 2, 1980; however, notwithstanding the fact that the 'litigation log' routinely maintained by my office reflected an 'answer due date' of July 19, 1980, the litigation file, together with the analysis made by the Director of our Claims Department, was inadvertently filed away with files pertaining to closed cases—a circumstance which only came to my attention on the morning of January 9, 1981 during the course of preparation of a report for our

company's financial auditors relative to cases closed in 1980.

"5. That, upon discovering the foregoing clerical oversight, I immediately called the Clerk of the Superior Court relative to the status of the case, and, upon being advised of entry of default judgment in the sum of approximately $96,000, I immediately telephoned and explained the situation to Eugene Zlaket, Esq., and retained him to undertake the defense of National Van Lines in this matter.

\* \* \* \* \* \*

"8. That, in summary, failure of National Van Lines to file a timely answer was due to human oversight and excusable neglect, and that National Van Lines does, in fact, have a real, substantial and meritorious defense to the plaintiff's Complaint."

In *Coconino Pulp and Paper Co. v. Marvin,* 83 Ariz. 117, 317 P.2d 550 (1957) this Court stated the following:

"If a [default] judgment is acquired because of a party's mere neglect, inadvertence or forgetfulness without any reasonable excuse therefor, the judgment will not be disturbed and the neglecting party must suffer the consequences. The general test of what is excusable is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances."

*Id.* at 120, 317 P.2d at 552. Courts in Arizona have long recognized that carelessness is not synonymous with excusable neglect. *Thomas v. Goettl Bros. Metal Products,* 76 Ariz. 54, 258 P.2d 816 (1953); *Beyerle Sand & Gravel, Inc. v. Martinez,* 118 Ariz. 60, 574 P.2d 853 (App.1977).

In the instant case an officer of the defendant corporation, who was also its general counsel, received the summons and complaint. Plaintiff's complaint was then sent to National's claims department after Mr. Torpats set up a "litigation file" and entered an "answer due date" on the "litigation log." The litigation file, together with the report from the Claims Depart-

ment, was returned to his office seventeen days before the answer was due. Although the litigation file was then misfiled, there was still an entry on the litigation log which should have reminded the defendant when an answer was due. In sum, the documents were in Mr. Torpats' possession on two occasions and a third reminder was noted in the litigation log. We do not believe that the reasonably prudent person would have failed to answer or at least requested additional time from the trial court under the same circumstances. In light of these facts and the well-recognized discretion of the trial court, we conclude that the trial judge properly found that there was no excusable neglect.

▮ National next claims that the motion to set aside should have been granted under Rule 60(c)(6) since its insurance carrier, Transport Indemnity, was not notified of Hirsch's lawsuit. On several occasions this Court has stated that an *insurer* has standing to set aside a default judgment against its insured, not only on behalf of its insured, but on its own behalf. *Union Oil, supra; Camacho v. Gardner,* 104 Ariz. 555, 456 P.2d 925 (1969); *Sandoval v. Chenoweth,* 102 Ariz. 241, 428 P.2d 98 (1967). In *Sandoval* we discussed the reasons for this rule and stated:

> "It seems to be settled that after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer. * * * [T]he rendition of judgment against the insured serves a dual purpose; that it not only creates a judgment debt in favor of the injured party, but at the same time it creates a debt under the insurance contract between the judgment debtor and his insurer; and that for this reason, the insurer should have a right to defend against the default judgment." (citations omitted).

102 Ariz. at 245, 428 P.2d at 102.

In the instant case National's insurer, Transport Indemnity (Transport), was not a named party, did not move to intervene, and did not move to have the default judgment set aside. The only evidence of the insurer's involvement in this action is an affidavit executed by a branch claim's manager nearly one year after Transport received notice of the default, and after the motion to set aside was denied by the trial court and appealed, which stated in part as follows:

> "* * * *
>
> "4) * * * [O]n January 16, 1981 the undersigned learned through the attorneys retained by National in Tucson that a default judgment had been entered in an amount which greatly exceeded the $30,000 interest of National Van Lines. Thereafter, a request was made by National that Transport enter an appearance in the matter. However, Transport Indemnity has refused to enter an appearance, asserting that National, by permitting a default judgment to occur, has uncontrovertedly prejudiced the rights of Transport Indemnity.
>
> "5) However, Transport Indemnity recognizes that if the default judgment is set aside, Transport Indemnity may well have coverage for the claim. Because of the potential that Transport Indemnity might be involved in the future with the claim of Mr. Hirsch, and because Transport Indemnity philosophically is adamantly opposed to resolving claims by default judgments, Transport Indemnity authorized counsel for National Van Lines in Tucson, to advise the Superior Court that counsel advocated the position of Transport Indemnity in attempting to set aside the default judgment.
>
> "6) Transport Indemnity recognizes that if the default judgment is set aside that such a result may be adverse to the economic interest of Transport Indemnity. However, Transport Indemnity's attitude toward default judgments is sufficiently strong, that it urges and endorses the setting aside of the default judgment in favor of Howard L. Hirsch."

This affidavit makes clear that although requested, Transport refused to enter an appearance in the action since it felt that

by allowing the default to be entered National "uncontrovertedly prejudiced the rights of Transport Indemnity." The affidavit also attempts to authorize National to advocate the position of Transport Indemnity in having the default set aside. We believe that this minimal involvement by the insurer, coming nearly one year after being notified of the default judgment, reflects that Transport Indemnity did not have the concerns that the Court discussed in *Sandoval* which would warrant an attempt to set aside the default judgment. We conclude, therefore, that National was not entitled to have the default judgment set aside on these grounds.

National finally claims that the default judgment is void since Hirsch's action is based solely on state common law. National argues that because the Federal Interstate Commerce Act preempts and supercedes state common law actions, and since Hirsch's complaint states no claim under this law, the default should have been set aside under either Rule 60(c)(4) or (6) Ariz. R.Civ.P.

■ The provisions of the Interstate Commerce Act which address the liability of common carriers under bills of lading are contained in 49 U.S.C. §§ 10103, 10730 and 11707 (previously codified at 49 U.S.C. § 20(11) and commonly referred to as the Carmack Amendment). Section 10103 provides that:

> "Except as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law."

In interpreting a similar provision in the Carmack Amendment, the Supreme Court in *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1912), concluded that this proviso preserves those rights and remedies, whether provided by the Interstate Commerce Act, state statute, or common law, which were not inconsistent with the Carmack Amendment. *See also Reed v. Aacon Auto Transport, Inc.*, 637 F.2d 1302 (10th Cir.1981). Thus, the Interstate Commerce Act preempts state law

only to the extent that it contradicts the federal law. Therefore, insofar as Hirsch's complaint was consistent with federal law, it was properly before the trial court. We also note that the complaint did state a claim under the Interstate Commerce Act since it alleged that "the acts and omissions of the Defendant and its agents were in violation of law including, but not limited to, the Interstate Commerce Act." Plaintiff's Complaint, count 10, paragraph II. The motion to set aside, therefore, was properly denied.

## Damages

National claims that the default judgment should have been set aside to the extent that the trial court's award of punitive and compensatory damages were violative of federal law. Although the defendant characterizes these arguments as grounds to set aside under Rule 60(c) Ariz. R.Civ.P., in actuality they are defenses to the amount of damages awarded by the trial court.

■ Where a default judgment has been entered, the defaulting party's primary remedy is a motion for relief from the judgment pursuant to Rule 60 Ariz.R.Civ.P. 6 Moore's Federal Practice ¶ 55.09 at 55–201 (2d ed. 1982). The general rule is that there is no appeal from a default judgment, although exceptions are recognized where the default was not authorized by Rule 55 Ariz. R.Civ.P. or if there is a question regarding either personal or subject matter jurisdiction. *Industrial Commission v. Parise,* 13 Ariz.App. 522, 478 P.2d 137 (1970); *City Bank of San Diego v. Ramage,* 266 Cal. App.2d 570, 72 Cal.Rptr. 273 (1968); *Dennison v. Doreen,* 281 Or. 89, 573 P.2d 1242 (1978); *Belue v. Belue,* 276 S.C. 120, 276 S.E.2d 295 (1981); 6 Moore's Federal Practice ¶ 55.09 at 55–201 (2d ed. 1982). The scope of an appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to set aside and does not extend to a review of whether the trial court was substantively correct in entering the judgment from which relief was sought. *Browder v. Director, Department of Correc-*

*tions,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Hayward v. Britt,* 572 F.2d 1324 (9th Cir.1978); 7 Moore's Federal Practice ¶ 60.29, at 413–15, ¶ 60.30[3], at 430–31 (2d ed. 1982); C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2871, at 257–59 (1973).

In the instant case the trial court properly complied with Rule 55 Ariz.R. Civ.P. and it is not contested that the trial court had jurisdiction over plaintiff's claim. We have already considered and rejected defendant's allegation of lack of personal jurisdiction due to improper service. Therefore, there are no grounds upon which the entry of default may be reversed. Furthermore, in light of the well-established law limiting the scope of appellate review to a consideration of the Rule 60 motion, substantive issues regarding the amount of damages are not subject to review.

The decision of the Court of Appeals is vacated and the trial court's amended judgment of default is affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.